UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YI SUN,

                              Plaintiff,

                    -against-

HEATHER J. SASLOVSKY, ESQ., et al.,

                              Defendants.

1:19-CV-10858 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, United States District Judge:

> Plaintiff Yi Sun ("Plaintiff"), who appears <u>pro se</u>, originally brought this action in the New York Supreme Court, New York County against 30 defendants, alleging that they violated her rights under federal and state law seeking damages and injunctive relief.  On November 22, 2019, counsel for Defendants New York City Administration for Children's Services ("ACS") and the New York City Police Department ("NYPD") filed a notice of removal and paid the relevant fees to remove the action to this Court.  (Docket Entry No. 1.)

> This Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.  The Court has reviewed thoroughly the submissions of the parties, and for the following reasons, dismisses the complaint.

<u>PROCEDURAL HISTORY</u>

> On December 2, 2019, counsel for ACS and the NYPD filed an amended notice of removal.  (Docket Entry No. 10.)  One day later, Defendant Hamilton College filed its answer.  (Docket Entry No. 12.)  The same day, Defendants Hugh H. Mo, Esq., the Law Firm of Hugh H. Mo, P.C., and Tsai Chung Chao, M.D., filed a letter motion, pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's claims against those defendants (Docket Entry No. 13), and counsel for ACS and the NYPD filed a letter requesting

additional time to respond to the amended complaint and for a pre-motion conference.  (Docket Entry No. 14.)

On December 5, 2019, Magistrate Judge Netburn issued an order by which she stayed the time for all of the defendants to respond to Plaintiff's amended complaint until further order of the Court.  (Docket Entry No. 17.)  The same day, Plaintiff filed a request for the Chief Judge of this Court to review this action, and for the Offices of the United States Attorney and of the Attorney General of the State of New York to investigate the defendants for criminal wrongdoing.  (ECF 18.)  On December 6, 2019, Plaintiff filed a document in which she requested that the Chief Judge issue a temporary restraining order to stay the orders of Magistrate Judge Netburn and this Court, and to remand this action to the state court.  (Docket Entry No. 21.)  Three days later, Plaintiff repeated those requests.  (Docket Entry No. 22.)

In a December 18, 2019, letter, Plaintiff described frustration and suffering she experienced due to this action and requested that this Court authorize her "passive euthanasia/death with dignity."  (Docket Entry No. 23, at 6, 13.)  The Court denied Plaintiff's request, identified available mental health resources, and urged her to seek therapy.  (Docket Entry No. 26.)  Three days later, Plaintiff again requested authorization for "passive euthanasia/death with dignity."  (Docket Entry Nos. 27, 28.)

On January 5, 2020, the Court received a letter from Plaintiff in which she requested that the Court give her "some time for therapy" between December 26, 2019, and January 12, 2020 due to her "weak physical condition."  (Docket Entry No. 30, at 2.)

The Court lifts the previously imposed stay.  (Docket Entry No. 17.)  For the reasons set forth below, the Court dismisses this action but grants Plaintiff leave to replead certain of her claims.

BACKGROUND

The following recitation of relevant facts is drawn from the Amended Complaint (Docket Entry No. 10-2 ("Am. Compl.")), the well-pleaded factual content of which is taken as true for purposes of this decision.

Plaintiff's amended complaint catalogues numerous negative experiences that she has allegedly suffered in her life.  Most prominently, Plaintiff alleges incidents of rape and sexual assault which occurred between 2003 and 2013 (see, e.g., Am. Compl. at 36), as well as a wide range of misconduct allegedly perpetrated by employees of ACS, members of the state judiciary, and private parties involved in Plaintiff's child custody case.  (Id. at 42-49.)

Plaintiff sues the following 30 defendants: (1) Heather J. Saslovsky, Esq., her child's law guardian in Family Court proceedings, (2) the Manhattan Juvenile Rights Office of the Legal Aid Society, (3) Margaret O'Mara, a witness in Family Court proceedings, (3) Tiffany Sylvestre, another witness in Family Court proceedings, (4) the "Manhattan Family Court" (the New York Family Court, New York County), (5) Clark Richardson, a New York County Family Court Judge, (6) Philip Schiffe, Esq., an attorney who represented Plaintiff in Family Court proceedings, (7) Ziwei Ram, a witness in Family Court proceedings, (8) Joann Stroman, Plaintiff's child's foster parent, (9) Forestdale, a private foster agency, (10) ACS, (11) Nicole Richards, an ACS employee, (12) Katrina Guerrero, an ACS employee, (13) Kira Lecznar, Esq., an ACS attorney, (14) "Mrs. Foster," an ACS employee, (15) Jesse Almonte, an ACS employee, (16) Zulma Montanez, Esq., an ACS attorney, (17) the New York State Central Register of Child Abuse and Maltreatment (also known as the Statewide Central Register of Child Abuse and Maltreatment) ("SCR"), (18) Rantideva Singh, an Administrative Law Judge employed by the

New York State Office of Children and Family Services ("OCFS"), (19) Marybeth S. Rochroath, a Queens County Family Court Judge, (20) "Queens Family Court" (the New York Family Court, Queens County), (21) Li Da Sun, Plaintiff's ex-husband, (22) Hugh H. Mo, Esq., Plaintiff's ex-husband's attorney, (23) The Law Firm of Hugh H. Mo, P.C., Plaintiff's ex-husband's attorney's law firm, (24) Li Yao Sun, Plaintiff's ex-husband's brother, (25) Tsai Chung Chao, M.D., a physician, (26) Dr. Charles L. Bardes, a witness in Family Court proceedings, (27) Michael A. Sorkin, Esq., an attorney who may have represented Dr. Chao, (28) Martin Clearwater & Bell, LLP, a law firm that employs Mr. Sorkin, (29) the NYPD, and (30) Hamilton College, the college that Plaintiff's child attends.

## STANDARD OF REVIEW

The Court has inherent authority to dismiss an action on the Court's own motion (sua sponte), even when a party has paid the fees to bring the action, if the Court determines that the action is frivolous, see Greathouse v. JHS Sec. Inc., 784 F.3d 105, 119 (2d Cir. 2015) ("Courts have . . . inherent authority to sua sponte dismiss frivolous suits."); Vidurek v. Miller, No. 13-CIV-4476 (VB), 2014 WL 901462, at *12 (S.D.N.Y. Feb. 27, 2014) ("[T]he Court has the inherent authority to dismiss frivolous claims sua sponte, even when the filing fee was paid – as it was here when the case was removed."), or finds that the Court lacks subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Frivolous suits are those that lack "an arguable basis either in law or in ffact."  Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

A court can also dismiss a complaint, or portion thereof, on the court's own motion, for failure to state a claim on which relief can be granted after giving the plaintiff notice

and an opportunity to be heard.  See, e.g., Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir.

1994) (notice and opportunity satisfied where defendants moved to dismiss and Plaintiff was

allowed to respond to the motions); Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1988) (notice and

opportunity to be heard not satisfied where none of the defendants had moved to dismiss prior to

the court's dismissal).  Here, Defendants Chao, Mo, and the Law Offices of Hugh M. Mo have

moved to dismiss the complaint (Docket Entry No. 13), and Plaintiff has not opposed that

motion, despite filing several other letters.  Accordingly, Plaintiff had notice the Court was

considering dismissal and had an opportunity to respond to the pending motion.

     The Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572

F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they

suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal

quotation marks and citations omitted).

## DISCUSSION

     Interpreting the amended complaint to raise the strongest claims it suggests,

Plaintiff asserts claims pursuant to 42 U.S.C. section 1983 that the defendants have violated her

federal constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments, as well

as claims under state law.

The Eleventh Amendment

     Plaintiff's claims under section 1983 against the New York Family Courts of New

York and Queens Counties and SCR are barred by the doctrine of Eleventh Amendment

immunity.  "[A]s a general rule, state governments may not be sued in federal court unless they

have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the

states' Eleventh Amendment immunity . . . ."  Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir.

2009) (internal quotation marks and citation omitted, second alteration in original).  This

immunity shields states from claims for money damages, injunctive relief, and retrospective

declaratory relief.  See Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. &

Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984).  "[T]he immunity recognized by the Eleventh

Amendment extends beyond the states themselves to state agents and state instrumentalities that

are, effectively, arms of a state."  Gollomp, 568 F.3d at 366 (internal quotation marks and

citation omitted).  The New York Family Courts and OCFS – the state agency that maintains

SCR[1] – are arms of the State of New York and enjoy Eleventh Amendment immunity.  See

Gollomp, 568 F.3d at 368 (the New York state court system enjoys Eleventh Amendment

immunity); Estate of M.D. v. New York, 241 F. Supp. 3d 413, 421-22 (S.D.N.Y. 2017) (OCFS

enjoys same); Murray v. Thompson, No. 17-CIV-7004, 2018 WL 5113955 (VB), at *4

(S.D.N.Y. Oct. 19, 2018) (a New York Family Court enjoys same); see also Finch v. N.Y.S.

Office of Children & Family Servs., 499 F. Supp. 2d 521, 535-36 (S.D.N.Y. 2007) (holding that

SCR supervisors that were sued in their official capacities enjoy same); Valmonte v. Perales, 788

F. Supp. 745, 755 (S.D.N.Y. 1992) (holding that the County Social Services Commissioners who

supervise SCR enjoy same), rev'd on other grounds sub nom. Valmonte v. Bane, 18 F.3d 992 (2d

Cir. 1994).

   Congress has not abrogated the States' immunity for claims under section 1983,

see Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) ("it is well settled that 42

U.S.C. § 1983 does not constitute an exercise of that authority"), and the State of New York has

---

[1]  OCFS "maintains the Statewide Central Register of Child Abuse and Maltreatment . . .
for reports made pursuant to the [New York State] Social Services Law."
https://ocfs.ny.gov/ main/cps/ (OCFS's website).

not waived its immunity to suit in federal court.  See Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 40 (2d Cir. 1977).

Accordingly, the Court dismisses Plaintiff's section 1983 claims against the defendants the New York Family Courts and SCR, a registry that is maintained by OCFS, a New York State agency, under the doctrine of Eleventh Amendment immunity and because the claims against these defendants are frivolous.  See Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" (quoting Neitzke, 490 U.S. at 327)).[2]

Judicial immunity

Plaintiff's section 1983 claims against New York Family Court Judges Richardson and Rochroath, and Administrative Law Judge Singh, are barred under the doctrine of judicial immunity.  Judges, including administrative law judges, are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (recognizing judicial immunity); Cleavinger v. Saxner, 474 U.S. 193, 200 (1985) (noting that administrative law judges "have been afforded absolute immunity"); Rivera v. Mattingly, 604 F. Supp. 2d 634, 638 (S.D.N.Y. 2009) (noting that judicial immunity protects OCFS administrative law judges from suit under section 1983).

Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature."  Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven

---

[2]  See also Zuckerman v. Appellate Div., Second Dep't, Supreme Court, 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court is not a "person" for the purpose of section 1983 liability); see generally Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (holding that a state agency is not a "person" for the purpose of section 1983 liability).

allegations of bad faith or malice cannot overcome judicial immunity." Id. at 209.  This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ."  Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994).  And, as amended in 1996, section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C.S. § 1983 (LexisNexis 2018).

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes an action that, although judicial in nature, is taken "in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11-12; see also Bliven, 579 F.3d at 209-10 (describing actions that are judicial in nature).  But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  Stump v. Sparkman, 435 U.S. 349, 356 (1978).

Plaintiff's claims against Family Court Judges Richardson and Rochroath and OCFS Administrative Law Judge Singh arise from those defendants' decisions in what appear to be New York Family Court and OCFS proceedings concerning Plaintiff's child.[3]  This conduct is well within the scope of a judge's duties.  Family Court Judges Richardson and Rochroath and

---

[3]     Plaintiff alleges that Judge Richardson "refused to give [her a] chan[ce] to show [her] evidence(s) to the family Court, and took [her] daughter to Forester Care by his Order" (Docket Entry No. 1-2, at 22, 24), "always stands up [for the] other party" (id. at 43), and "always used his power to seek personal gains… showing no remorse."  (Id. at 56.) Regarding Judge Rochroath, Plaintiff alleges bias arising from a close relationship to the defendant's attorney in that case, Hugh Mo (id. at 43), that Rochroath "told [her] in the courtroom: "I do not believe you" (id. at 48), made an "unfair decision" (id. at 49), and "rejected [her] request once again" to "give [her] and [her] daughter an order of protection."  (Id. at 48.)  With regard to Administrative Law Judge Singh, plaintiff alleges "I felt that the Administrative Law Judge do/did not treat my right(s) and he don't understand my all situation in the ACS case(s)."  (Id. at 25.)

OCFS Administrative Law Judge Singh are therefore immune from suit under the doctrine of judicial immunity.  Accordingly, the Court dismisses Plaintiff's section 1983 claims against these defendants under the doctrine of judicial immunity and because these claims are frivolous. See Montero, 171 F.3d at 760.[4]

Government-attorney immunity

The Court must also dismiss Plaintiff's section 1983 claims for damages against ACS attorneys Kira Lecznar, Esq., and Zulma Montanez, Esq.  Plaintiff's claims arise from these attorneys' advocacy for ACS in the New York Family Courts and before OCFS Administrative Law Judge Singh.  Government attorneys are immune from suit under section 1983 for damages

---

[4]     The amendment to section 1983, allowing for injunctive relief against a judge only if a state-court declaratory decree was violated or state-court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive and declaratory relief against these defendants.  This is so because she can appeal a Family Court Judge's decision in the state appellate courts, see N.Y. Family Court Act § 1112, and she can seek state-court judicial review of a final decision of OCFS under Article 78 of the New York Civil Practice Law and Rules ("Art. 78").  See Rivera v. Mattingly, No. 06-CIV-7077 (LAP), 2015 WL 13679496, at *3 (S.D.N.Y. Mar. 30, 2015) (describing OCFS fair-hearing procedure, including state-court judicial review under Art. 78); see generally Howard v. New York State Div. of Parole, No. 15-CIV-5317 (DLI) (SJB), 2018 WL 4636951, at *3 (E.D.N.Y. Sept. 26, 2018) (holding that a party could not seek, under section 1983, injunctive relief against a state administrative law judge); Berlin v. Meijia, No. 15-CIV-5308 (JMA), 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), appeal dismissed, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

Plaintiff alleges that Singh failed to provide her with a "full time hearing" but still issued an unspecified decision on February 7, 2019.  (Docket Entry 1-2, at 24-25, 58.)  To the extent that Plaintiff asserts that Singh violated her right to procedural due process, such a claim also would fail because Plaintiff has not alleged any facts showing that she sought judicial review of Singh's decision in an Art. 78 proceeding.  See Rivera, 2015 WL 13679496, at *3; Vialez v. N.Y.C. Hous. Auth., 783 F. Supp. 109, 114 (S.D.N.Y. 1991) ("[I]f a plaintiff had an opportunity to contest a defendant's actions [in state court] but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983.").

"when functioning as an advocate of the state in a way that is intimately associated with the judicial process." Mangiafico v. Blumenthal, 471 F.3d 391, 396 (2d Cir. 2006).  This immunity applies to government attorneys who perform functions "'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits," id. (quoting Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986)), and has been specifically extended to an ACS attorney for claims against her that "relate to [her] acts . . . within the scope of her job representing the City of New York in a family court proceeding."  Bey v. Antoine, No. 19-CIV-1877 (PKC) (RER), 2019 WL 3081458, at *5 (E.D.N.Y. July 15, 2019); see Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010) ("[A]n attorney for a county Department of Social Services who 'initiates and prosecutes child protective orders and represents the interests of the Department and the County in Family Court' is entitled to absolute immunity.") (citation omitted).

Moreover, "the common law precedents also extend absolute immunity to [government attorneys] participating in the administrative process." Bloom v. New York State Comm'r of Health, 573 F. Supp. 2d 732, 740 (E.D.N.Y. 2004) (citing Butz v. Economou, 438 U.S. 478, 509-10 (1978)); see Butz, 438 U.S at 517 ("[A]n agency attorney who arranges for the presentation of evidence on the record in [the] course of an [administrative] adjudication is absolutely immune from suits based on the introduction of such evidence.").

Plaintiff asserts section 1983 claims against Lecznar and Montanez that arise from Lecznar's advocacy on behalf of ACS in Family Court proceedings and Montanez's advocacy on behalf of ACS before OCFS Administrative Law Judge Singh.[5]  Accordingly, the Court

---

[5]  Plaintiff alleges that "the ACS attorney Ms. Zulma Montanez… made a misrepresentation" when she "showed a paper to 'Hon. Mr. Tantideva Singh.'"  (Am. Comp. at 24.)  As to Ms. Lecznar, Plaintiff alleges that she was an attorney for ACS and showed the Family Court a clinical report in which there were "many mistakes" and which contained an assertion of "mental illness."  (Id. at 42, 46).

dismisses Plaintiff's section 1983 claims for damages against these defendants under the doctrine of government-attorney immunity and because these claims are frivolous.  See Montero, 171 F.3d at 760.

Witness immunity

The Court must also dismiss all of Plaintiff's section 1983 claims for damages that arise from any of the defendants' testimony in Family Court proceedings.  Grand jury and trial court witnesses are absolutely immune from liability under section 1983 for damages arising from their testimony, even if that testimony was false.  See Rehberg v. Paulk, 566 U.S. 356, 366-69 (2012); Briscoe v. LaHue, 460 U.S. 325 (1983); see also Jovanovic v. City of New York, 486 Fed. App'x 149, 152 (2d Cir. 2012) (when the "only avenue by which the [fabricated evidence can] reach the jury [is] through [a witness's] testimony," claims of fabricated evidence are precluded by witness immunity).  This immunity has been extended to witnesses in Family Court proceedings.  See Buchanan v. Ford, 638 F. Supp. 168, 171 (N.D.N.Y. 1986).

Plaintiff asserts section 1983 claims for damages against Margaret O'Mara, Tiffany Sylvestre, Ziwei Ram, Nicole Richards, and Dr. Charles L. Bardes that are based on their testimony in Family Court proceedings.[6]  The Court dismisses these claims under the doctrine of witness immunity and because they are frivolous.  See Montero, 171 F.3d at 760.

---

[6]     Plaintiff alleges that O'Mara, Ram, and Bardes were "perjured witness[es]."  (Am. Compl. at 26, 33.)  Plaintiff alleges Richards "made a statement she knows to be false" "to the Court on 4/16/2015."  (Id. at 44.)  Plaintiff alleges that Sylvestre prepared a clinical psychiatric report pursuant to an order of the Family Court which contained "many mistakes."  (Id. at 45-46.)

Claims against NYPD & ACS

Some of Plaintiff's claims against the NYPD and ACS are duplicative of her claims in another pending action before this Court.  See Yi Sun v. N.Y.C. Police Dep't, No. 1:18-CV-11002 (LTS) (SN) (S.D.N.Y.).  The Court dismisses the overlapping claims without prejudice to litigation of those claims against the NYPD and ACS in Yi Sun, No 1:18-CV-11002 (LTS) (SN) (S.D.N.Y.).

As agencies of the City of New York, the NYPD and ACS are not entities that can be sued.  N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); Friedman v. N.Y.C. Admin. For Children's Servs., 502 F. App'x 23, 27 n.3 (2d Cir. 2012) (ACS is not a suable entity); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (the NYPD is not a suable entity); see also Emerson v. City of New York, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency.").  The Court therefore construes any remaining claims against these defendants as brought against the City of New York.  Harris, 572 F.3d at 72.

To state a claim under section 1983 against a municipality such as the City of New York, Plaintiff must allege that the municipality itself caused the violation of the plaintiff's rights.  See Connick v. Thompson, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978)).  In other words, to state a section 1983 claim against a municipality, the plaintiff must allege facts

showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights.  Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012); see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (internal citations omitted).

        Plaintiff has alleged no facts which could show that a policy, custom, or practice of the City of New York has caused violations of her federal constitutional rights.[7]  The Court therefore dismisses Plaintiff's remaining section 1983 claims against the NYPD and ACS (and thus, the City of New York) for failure to state a claim on which relief can be granted.  Because the Court is dismissing these claims on its own motion and Plaintiff did not have an opportunity to offer additional facts, the Court grants Plaintiff leave to replead the following claims in a second amended complaint: (1) NYPD officers retaliated agasint Plaintiff because of her complaints of alleged sexual assault, in violation of the First Amendment (Am. Compl. at 13); (2) ACS caused Plaintiff to be subjected to involuntary psychiatric treatment, in violation of the Fourteenth Amendment (Am. Compl. at 20, 53-54); (3) NYPD officers falsely arrested and detained Plaintiff at the 13th precinct in the summer of 2010, in violation of the Fourth Amendment (Am. Compl. at 29, 31).  The second amended complaint must include facts

---

[7]    Plaintiff alleges that six officers of the NYPD working in five different precincts between the years of 2003-2013 raped her and "extorted sex and money from [her] in order for [her] to stay out of jail and keep [her] child," but offers no facts from which the Court can properly infer that these acts done were pursuant to an NYPD or City policy, custom, or practice.  (Am. Compl. at 35-36.)  Relatedly, Plaintiff offers only a general allegation that "[i]t is common for police officers to shield each other from punishment" (Am. Compl. at 40), citing unrelated events over the course of decades in which her complaints to detectives and supervisors were not answered satisfactorily.  See, e.g., id. at 33, 38.  Plaintiff similarly makes conclusory allegations that employees of ACS worked together to deprive her of custody of her child through the use of false testimony, but alleges no facts from which the Court can properly infer that such conduct was the product of a practice or custom attributable to the City of New York.  See, e.g., id. at 42-46, 51-53.)

demonstrating that the alleged violations of Plaintiff's constitutional rights were caused by a policy, custom, or practice of the City.

Plaintiff's Section 1983 claims against private entities

To state a claim under section 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." West v. Atkins, 487 U.S. 42, 48-49 (1988). Private parties generally are not state actors and therefore are not usually liable under section 1983. Sykes v. Bank of Am., 723 F.3d 399, 406 (2d Cir. 2013) (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Plaintiff has named the following private individuals and entities as defendants: Heather J. Saslovsky, Esq., Philip Schiffe, Esq., the Manhattan Juvenile Rights Office of the Legal Aid Society, Li Da Sun, Li Yao Sun, Hugh H. Mo, Esq., The Law Firm of Hugh H. Mo, P.C., Tsai Chung Chao, M.D., Michael A. Sonkin, Esq., Martin Clearwater & Bell, LLP, Joan Stroman, and Hamilton College. Plaintiff has alleged no facts showing that any of these defendants has acted as a state actor in any relevant respect.[8] The Court therefore dismisses

---

[8]     This includes: (1) Saslovsky in her capacity as Plaintiff's child's Family Court-appointed law guardian, Milan v. Wertheimer, 808 F.3d 961, 964 (2d Cir. 2015) (Family Court-appointed law guardians are not state actors for the purpose of section 1983); (2) any of the defendants who are private attorneys or law firms or legal aid organizations, such as Saslovsky, the Manhattan Juvenile Rights Office of the Legal Aid Society, Mo, Schiffe, The Law Firm of Hugh H. Mo, P.C., Sonkin, and Martin Clearwater & Bell, LLP, see Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (a legal aid organization is not a state actor); Hayes v. Law Firm of Aiello & Cannick, No. 10-CIV-5511 (KMK), 2013 WL 1187439, at *4 (S.D.N.Y. Mar. 21, 2013) ("Defendants, Plaintiff's privately retained former attorney and that attorney's law firm, are clearly not state actors.") (citing Polk Cnty. v. Dodson, 454 U.S. 312, 324 (1981)), appeal dismissed, No. 13-1584 (2d Cir. July

Plaintiff's section 1983 claims against these defendants for failure to state a claim on which relief can be granted.  Because the Court is dismissing these claims on its own motion and Plaintiff did not have an opportunity to offer additional facts, the Court grants Plaintiff leave to replead these claims in a second amended complaint, which must include facts demonstrating that any private individuals or entities against which Plaintiff intends to continue to pursue claims took the action complained of pursuant to state authority rather than in a private capacity.

Claims of conspiracy

Plaintiff alleges that many of the defendants conspired with each other to violate her federal constitutional rights.  The Court understands these allegations as attempting to state a claim under section 1983, as well as 42 U.S.C. section 1985(3) ("section 1985"), which applies specifically to conspiracies.  To state a claim pursuant to section 1985, Plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003).  Because Plaintiff's allegations are vague and lack supporting facts,[9] they fail to state a claim of conspiracy under either 42 U.S.C. section 1983 or 42 U.S.C. section 1985(3). See Wang v. Miller, 356 F. App' x 516, 517 (2d Cir. 2009); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.1983) (noting that section 1985 claims must be dismissed where they contain "only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights").  The Court therefore dismisses these claims for failure to state a claim on which relief

---

26, 2013); and (3) Stroman, Plaintiff's child's foster parent, see, e.g., Smith v. Gristina, No. 11-CIV-2371 (VB), 2012 WL 247017, at *3 (S.D.N.Y. Jan. 6, 2012) ("Courts of Appeals that have examined whether foster parents are state actors under Section 1983 have resoundingly answered in the negative.")

[9]    Plaintiff alleges in conclusory fashion that witnesses colluded and received unspecified awards for being "member[s] of [the] syndicate."  (Am. Compl. at 51.)

can be granted.  The Court grants Plaintiff leave to replead these claims in a second amended

complaint, which must include facts demonstrating that any private individuals or entities against

which Plaintiff intends to continue to pursue claims took the action complained of pursuant to

state authority rather than in a private capacity.

Plaintiff's remaining Section 1983 claims

Plaintiff's remaining section 1983 claims are against ACS employees (Guerrero,

Foster, and Almonte) as well as Forestdale, a private foster agency.  Plaintiff alleges either very

little or nothing at all about these defendants.  She asserts that on January 18, 2017, at her

request, Guerrero, an ACS caseworker, gave her a copy of a clinical report prepared by

Sylvestre.  (Am. Compl. at 45-46.)  She also states that Guerrero is a member of a "syndicate,"

along with some of the other individual defendants.  (Id. at 51.)  She alleges nothing about

Almonte or Foster.  And she seems to allege simply that Forestdale is the foster agency that

placed her child with a foster parent and gave the child educational opportunities.  (Id. at 43, 51,

56.)

To state a claim under section 1983 against an individual state-actor defendant, a

plaintiff must allege facts showing the individual's direct and personal involvement in the alleged

constitutional deprivation.  See Spavone v. N.Y. State Dep't of Corr. Serv., 719 F.3d 127, 135 (2d

Cir. 2013) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).  An individual

defendant may not be held liable under section 1983 solely because that defendant employs or

supervises a person who violated the plaintiff's rights.  See Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior.").  An individual can be personally involved

in a section 1983 violation if:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873.[10]

A private foster agency is a state actor, see Perez v. Sugarman, 499 F.2d 761 (2d Cir. 1974), and can be liable under section 1983 if Plaintiff's constitutional rights were violated as a result of the agency's policy.  See Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (discussing section 1983 liability of private organizations that employ state actors) (quoting Monell, 436 U.S. at 691); P.A. v. City of New York, 44 F. Supp. 3d 287, 306 (E.D.N.Y. 2014) ("Courts have extended Monell's limitations on respondeat superior liability to private organizations acting under color of state law."), appeal dismissed sub nom., Rodriguez v. Anderson, 633 F. App'x 7 (2d Cir. 2015).

Plaintiff has, however, provided insufficient facts to suggest that Guerrero, Foster, or Almonte were personally involved in any violation of her federal constitutional rights, or that a policy of Forestdale resulted in such a violation.  The Court therefore dismisses Plaintiff's claims against these defendants for failure to state a claim on which relief can be granted.  The Court grants Plaintiff leave to replead these claims in a second amended complaint.  To state a claim of conspiracy to violate Plaintiff's constitutional rights under section 1983, the second amended complaint must include facts demonstrating that Guerrero, Foster, and Almonte, either

---

[10]    "Although the Supreme Court's decision in [Iqbal, 556 U.S. 662] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," the Second Circuit has not yet examined that issue.  Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).

as state actors or along with a state actor, agreed to act in concert to inflict an unconstitutional injury upon Plaintiff and performed an overt act in furtherance of that goal causing damage.  See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  As to Forestdale, the second amended complaint must include facts showing that the foster agency had a policy, custom, or practice of making agreements to act in concert to inflict unconstitutional injuries pursuant to which its agents performed over acts in furtherance of that goal causing damage.  See Jones, 691 F.3d at 80.

Claims under state law

A district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C.S. § 1367(c)(3) (LexisNexis 2012).  Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . ."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote omitted).  Having dismissed all of the claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any claims under state law Plaintiff may be asserting.  See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'") (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).

CONCLUSION

The Court lifts the previously imposed stay.

For the foregoing reasons, the Court dismisses this action. The Court dismisses all of Plaintiff's claims under federal law as frivolous, except Plaintiff's claims against the NYPD, ACS, Heather J. Saslovsky, Esq., Philip Schiffe, Esq., the Manhattan Juvenile Rights Office of the Legal Aid Society, Li Da Sun, Li Yao Sun, Hugh H. Mo, Esq., the Law Firm of Hugh H. Mo, P.C., Tsai Chung Chao, M.D., Michael A. Sonkin, Esq., Martin Clearwater & Bell, LLP, Joan Stroman, Hamilton College, Katrina Guerrero, Mrs. Foster, Jesse Almonte, and Forestdale. As explained below, the federal claims against these remaining defendants are dismissed without prejudice to the extent they duplicate her federal claims against the NYPD and ACS that have been asserted in Yi Sun v. N.Y.C. Police Dep't, No. 1:18-CV-11002 (LTS) (SN) (S.D.N.Y.), and the Court dismisses the remaining claims for failure to state a claim upon which relief may be granted and permits Plaintiff to file a Second Amended Complaint repleading those claims with additional facts.

The Court dismisses for failure to state a claim on which relief can be granted Plaintiff's claims under federal law against Heather J. Saslovsky, Esq., Philip Schiffe, Esq., the Manhattan Juvenile Rights Office of the Legal Aid Society, Li Da Sun, Li Yao Sun, Hugh H. Mo, Esq., the Law Firm of Hugh H. Mo, P.C., Tsai Chung Chao, M.D., Michael A. Sonkin, Esq., Martin Clearwater & Bell, LLP, Joan Stroman, Hamilton College, Katrina Guerrero, Mrs. Foster, Jesse Almonte, and Forestdale, as well as her remaining claims under federal law against the NYPD and ACS. Because the Court dismisses these claims sua sponte for failure to state a claim on which relief may be granted, the Court grants Plaintiff leave to replead these claims in a Second Amended Complaint, **which must be filed by September 21, 2020**. This opinion specifies the types of additional facts that must be included in the Second Amended Complaint (see pages 13, 15, 16, 17, 18 above, concerning claims against the City of New York, Heather J.

Saslovsky, Esq., Philip Schiffe, Esq., the Manhattan Juvenile Rights Office of the Legal Aid

Society, Li Da Sun, Li Yao Sun, Hugh H. Mo, Esq., The Law Firm of Hugh H. Mo, P.C., Tsai

Chung Chao, M.D., Michael A. Sonkin, Esq., Martin Clearwater & Bell, LLP, Joan Stroman,

Hamilton College, Katrina Guerrero, Mrs. Foster, Jesse Almonte, Forestdale).  See, e.g.,

Wachtler, 35 F.3d at 82.

   Plaintiff must not assert in her second amended complaint any of the claims that

the Court has dismissed as frivolous in this order.

   If Plaintiff fails to file a second amended complaint within the time allowed, the

Court will enter a judgment dismissing this action with prejudice except to the extent Plaintiffs'

claims against the NYPD and ACS overlap those asserted in Yi Sun v. N.Y.C. Police Dep't, No.

1:18-CV-11002 (LTS) (SN).

   The Court declines to exercise supplemental jurisdiction of any of Plaintiff's

claims under state law.  28 U.S.C. § 1367(c)(3).

   The Court denies as moot all motions and requests for relief not previously

addressed by the Court.

   The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

   The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and

note service on the docket.  In light of the current global health crisis, Plaintiff is encouraged to

submit all filings by email to Temporary_Pro_Se_Filing@nysd.uscourts.gov.  Plaintiff is also

encouraged to consent to receive all court documents electronically.  A consent to electronic

service form is attached to this order and is available on the Court's website.  If email is

unavailable, Plaintiff may submit documents by regular mail or in person at the drop box located

at the U.S. Courthouse in Manhattan, 500 Pearl Street, New York, NY, 10007.  For more

information, including instructions on this new email service for pro se parties, please visit the

Court's website at nysd.uscourts.gov.

       SO ORDERED.

 Dated:    August 6, 2020
           New York, New York

                                    /s/ Laura Taylor Swain
                                  LAURA TAYLOR SWAIN
                                  United States District Judge

Copy Mailed To:     Yi Sun
                     10 E. 116th St, Apt. 3A
                     New York, NY 10029

**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

_____
Name (Last, First, MI)

_____
Address          City          State          Zip Code

_____
Telephone Number          E-mail Address

_____
Date          Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007